Ralph v. Stuart.

---

EDWARD RALPH, JUNIOR, and another *v.* JAMES and JOSEPH STUART. (*a*)

An agent in the city of New York, holding samples of goods from a mercantile firm located in Ireland, agreed by parol, on behalf of said firm, to sell to the plaintiffs grass seed of certain kinds and quantities, to be packed in a prescribed manner, and shipped, free of charges, at Liverpool. Terms, a bill at ninety days. The said firm shipped grass seed, but differing in kinds, quantities and mode of shipment. They charged expenses to time of shipment at Liverpool, and drew a bill at four months. They advised the plaintiffs, by letter, that the seed was shipped "in compliance" with their "order," and sent the plaintiffs an invoice, stating the shipment to be on their account and risk. The bill of lading was sent to the defendants, who also received the draft. The plaintiffs called and accepted the draft, but the defendants requested them to discount it, which they refused, and directed the defendants to inquire as to their credit. The defendants afterwards refused to deliver the seed without payment.

*Held*, that an action in the nature of trover would not lie against the defendants.

*Held*, further, that the circumstance did not constitute a delivery, so as to vest in the plaintiffs a title to the property.

THE plaintiffs were merchants, forming the firm of Ralph & Co., and the defendants were merchants and bankers,

---

(*a*) Affirmed in the Court of Appeals.

under the firm name of J. & J. Stuart.   The business of both firms was conducted in the city of New York.

On the 23d of April, 1853, James Black, an agent in the city of New York, holding samples of grass seeds, furnished him by McBlain & Co., of Newry, Ireland, agreed, on behalf of McBlain & Co., as follows:   "To sell to the plaintiffs 250 bushels British perennial rye grass seed, at 3 shillings; 50 bushels Italian rye grass seed, at 5 shillings; and 8 bushels rape seed at 6 shillings.   The terms to be a bill at 90 days; the goods to be shipped free on board at Liverpool, and packed in timothy and clover seed tierces."   Black entered a memorandum of the sale in a book kept by him, and he testified that he transmitted " the order" to the plaintiffs.

On the 12th of the ensuing December, the plaintiffs made, at Liverpool, a shipment, in accordance with the following bill of lading:

"Invoice of 31 bales grass seed, shipped by McBlain & Co., Newry, in the ship " Compromise," Tzerega, master, from Liverpool, and bound for New York, on account and risk of Messrs. Ralph & Co., New York, and consigned to order.

| | | £ | s. | d. |
|---|---|---|---|---|
| 25 sacks, cont'g 200 bushels perennial rye grass, *a* 4s., | | £40 | 0 | 0 |
| 6 do.      do.     48 bush. Ital'n rye, *a* 5s., | | 12 | 0 | 0 |
| 31 hemp sacks, strong, 2s. 6d., | | 3 | 17 | 6 |

Charges.

| | £ | s. | d. | | | |
|---|---|---|---|---|---|---|
| Freight to Liverpool, &c., | £1 | 11 | 0 | | | |
| Insurance on £70, at 40s., | 1 | 10 | 6 | | | |
| Cartage in L'pool, fow'd charges, B. lading, dock and town dues and entry, | 1 | 5 | 3 | | | |
| | | | | 4 | 6 | 9 |
| | | | | £60 | 4 | 3 |

E. E.      Newry, 12th Dec'r, 1853.

McBlain & Co."

The shippers sent from Ireland to the plaintiffs, at New York, the above invoice, together with the following letter:

Ralph *v.* Stuart.

"NEWRY, 12th Dec., 1853.

"Messrs. RALPH & Co., New York:

"Dear Sirs—Annexed we beg to hand you invoice of 31 sacks grass seed, shipped in compliance with your esteemed order, per ship "Compromise," and which we hope will arrive safe, and please.   The seed is the same as sample, and it has been carefully packed in strong hemp sacks, and freight agreed for, on very moderate terms.

"We have valued on you for the amount, at 4 mos. date, which are our usual terms.   90 days, Mr. Black advised us, was the terms agreed on with you; however, the 4 mos. will bring the seed into cash.   We have made the bill payable to our friends, Messrs. J. & J. Stuart & Co., who will hand you bill lading.

"We trust this shipment will prove profitable, and lead to further and more extensive transactions; waiting which,

"We are, d'r sirs,

"Yours resp'y,

"McBLAIN & Co.

"P. S.—Should you see Mr. Black, will you be good enough to say to him, that not having given us any address, we could never write him, and that we would be glad to hear from him."

The bill of lading, and also a draft, drawn as intimated in the letter, were transmitted to the defendants.

One of the plaintiffs called upon the defendants, stating his readiness to receive the seed shipped, and to accept the draft. The draft was accordingly accepted, and a delivery of the bill of lading was requested.   The defendants inquired if the plaintiffs were prepared to discount the draft.   The plaintiff present asked whether the defendants did not consider Ralph & Co. good, and stated that they could make inquiry of persons in the trade, mentioning a Mr. Allen.   The defendants refused to deliver the bill of lading or seed unless the draft was discounted.

Within a few days after this interview, the defendants wrote to the plaintiffs as follows:

" DEAR SIRS—We have reconsidered our intention of calling on Mr. Allen about your standing. As we make nothing by the transaction, we wish to take no risk in the matter. We will, therefore, not deliver the seed unless it is paid for.

" New York, Feb. 21, 1854.

" Very respectfully yours,

" J. & J. STUART & Co.

" Messrs. RALPH & Co."

The complaint charged a wrongful conversion of the seed described in the invoice, and claimed to recover of the defendants the value, by way of damages.

At the trial the plaintiffs were nonsuited. The nonsuit was sustained at a special term. Upon that decision, INGRAHAM, FIRST J., after referring generally to the facts, delivered his opinion as follows:

" Even conceding that the plaintiffs would have had a right to maintain this action, and recover the property, if the order had been fully complied with, it is enough for this case to say, that the order never was complied with in such a way as to make the shipment in Liverpool a delivery of the goods to the plaintiffs, or to entitle them to the possession. Neither in quantity, price, mode of packing or being free of charge on board of ship, was the order complied with. The plaintiffs were under no obligations to receive the goods at this port; they might have disavowed the sale on their part and refused to take the goods, and so long as this was the case, no delivery to them can be inferred from this shipment at Liverpool. The goods here, with the bill of lading in possession of the defendants, Stuarts, were still to be considered in the possession of McBlain & Co., and they had the power at any time, until such delivery was made here and accepted by the plaintiffs, to decline completing the sale.

" That the plaintiffs may have a cause of action against other parties for a breach of the contract of sale, as made by Black, may be possible, but no case has been shown on the trial to warrant them in taking possession of property from the defendants without their consent."

From a judgment of nonsuit, the plaintiffs appealed to the general term.

*Daniel T. Walden,* for the plaintiffs, made and argued the following points :

To sustain this action, it is necessary that the plaintiffs should prove a right of property in the goods converted, and a right to the possession. (2 Saund. Pl. & Ev. 459, 460 ; marg. pp. 869–71 ; *Hotchkiss* v. *McVickar,* 12 Johns. 403 ; *Sheldon* v. *Soper,* 14 ib. 352 ; *Bush* v. *Lyon,* 9 Cow. 52 ; Espinnasse's Ev. 235.)

I. The plaintiffs had the right of property in the goods claimed.

1. The letter and invoice of McBlain & Co., accepted by the plaintiffs, is a sufficient contract in writing under the statute of frauds. (*Russell* v. *Nicol,* 3 Wend. 112 ; *Davis* v. *Shield,* 26 ib. 341.)

2. The letter, in its terms, shows that it is in compliance with an order from the plaintiffs ; it is not an offer to sell, but a sale pursuant to order, and the goods are shipped " on account and risk of Messrs. Ralph & Co.," the plaintiffs, and insured for them.

The right of property in goods passes by the contract of sale, nothing remaining to be done by the vendors before making delivery, (such as weighing, measuring, &c.,) and this, although the price be not paid, or the articles sold delivered to the purchaser. (Addison on Cont. 41–43 ; Blackburn on Sales, 170–200, 222 ; Noy's Maxims, ch. 42, 88 ; *Tarling* v. *Baxter,* 9 D. & R. 276 ; Per Bayley, J., 6 B. & C. *S. C.* ; *Barr* v. *Gibson,* 3 M. & W. 390 ; 1 Parsons on Cont. 440, 441, 448, and cases cited in notes ; *Willis* v. *Willis,* 6 Dana R. 49 ; *Wing* v. *Clark,* 24 Maine R. 366 ; *Pleasants* v. *Pendleton,* 6 Rand. 473 ; Per Jewitt, J., *Joyce* v. *Adams,* 4 Selden, 296 ; *Heine* v. *Anderson,* 2 Duer R. 326, per *curiam ; Olyphant* v. *Baker,* 5 Denio, 379, per *Beardsley,* Ch. J., 382, 84, and cases cited.)

Delivery of the goods is not necessary to transfer the title.

(Cases cited above, and Story on Sales, § 300, &c.; *Lanfear* v. *Summer*, 17 Mass. 113; *Reeker* v. *Crass*, 5 N. Hamp. 571; Hilliard on Sales, 75; and see cases cited next point.)

II. The plaintiffs had the right of possession. They accepted the draft, which was the terms of payment under the contract of sale, and their title to the goods became perfected. The right of possession becomes perfected in the vendee on tender of the price, and if the vendor refuses to deliver the goods, the vendee may maintain trover. (Espinnasse's Ev. 296; Story on Sales, § 413; Saunders' Pl. and Ev. 872, (marg. p.); *Martindale* v. *Smith*, 1 Adol. & Ellis, (N. S.) 377; Smith's Mercantile Law, by Holcomb, 568; *Hand* v. *Whitehouse*, 7 East, 558; *Hanson* v. *Myer*, 6 ib. 627; *Carter* v. *Jarvis*, 9 Johns. R. 148; *Higgins* v. *Chapman*, 9 Pick. 10; *Dale* v. *Stimpson*, 21 ib. 384; *Greening* v. *Wilkinson*, 1 Carr. & P. 625; *Martin* v. *Adcock*, 4 Esp. 251; *Gainsford* v. *Carrol*, 2 B. & C. 624; *Boorman* v. *Nash*, 9 ib. 145; *Bradley* v. *Mitchell*, 1 Carter, (Ind.) 551; *Conway* v. *Bush*, 4 Barb. 564; 1 Parsons on Cont. 448, note p.; Story on Cont. § 846; *Key* v. *Cotesworth*, 14 Eng. Law and Eq. R. 491, per Parker, B.)

III. That the vendors did not send all the goods ordered through Black, is no answer to the plaintiffs' action; the plaintiffs elected to receive them, and the defendants were bound to deliver. If the letter of McBlain & Co. was a mere offer to sell on the terms therein stated, the acceptance of the draft by plaintiffs was their assent, and made a complete contract of sale between them, with like effect as if they had made an answer of acceptance. (Story on Cont. §§ 25, 385; 1 Duer on Ins. 116–131; 1 Parsons on Cont. 399, and note; *Bruce* v. *Pearson*, 3 Johns. R. 534, per *curiam; Eleason* v. *Henshaw*, 4 Wheat. 225, per Washington, J., 229; *Mactree* v. *Frith*, 6 Wend. 103; *Downer* v. *Thompson*, 6 Hill, 208.)

IV. For all that appeared in the evidence, the invoice of goods sent was a full compliance with the " esteemed order," as stated in the letter.

V. If there was any question as to the acceptance of the

goods as performance of the contract of sale, or of any alteration of the terms of payment, by the conversation between plaintiffs and defendants, it was a question for the jury. (*Corning* v. *Colt*, 5 Wend. 253 ; *De Redder* v. *McKnight*, 13 Johns. R. 294.)

VI. The nonsuit was improperly granted, and a new trial should be ordered.

*Augustus F. Smith*, for the defendants, made and argued the following points :

I. In the consideration of this case, the order to and the transactions with the witness, Black, must be laid entirely out of the account. The order had no binding force upon either party as a contract. It had not the name of the seller, nor is it signed at all. There was no money paid, and no part of the seed delivered. (See 2 R. S. 136, § 3.) McBlain & Co. seem not to have referred to the order. The quantities were not those ordered. The prices were not in all cases the same. The rape seed was not sent. The seed was in sacks, not tierces. The bill was at 4 months, not 90 days. The seed was to be free on board at Liverpool, while McBlain & Co. charged all the expenses to the time of shipment. The seed was not sent till near eight months after the order, and about seven months after McBlain & Co. must have received it.

II. The case is be determined upon what is to be found in the letter of December 12th, and the invoice, together with what occurred between Mr. Ralph and one of the defendants, Stuart. And the point is, had the plaintiffs the legal title to the property ? 1. The shipment at Liverpool, had it been in accordance with the contract between the parties, and in compliance with the terms thereof, would have been a delivery, and would have bound both parties. In that case the title would have passed, and had the goods been lost on the passage, Ralph & Co. must have paid for them notwithstanding. 2. But this shipment was not in accordance with any contract, nor of any order even. It could not bind Ralph & Co. If it did not bind them, it certainly did not bind McBlain &

Co., for both were bound, or neither. Had the seed been lost, Ralph & Co. were in no way responsible for the price. 3. The transaction was, in legal effect, as if no order had ever been given, and McBlain & Co. had shipped the seed to New York, with the expectation of making a sale to the plaintiffs, provided the terms could be agreed upon, and to that end wrote the letter of the 12th of December, and sent the invoice—at the same time, however, themselves keeping the bill of lading, and thereby the control of the shipment. Both parties knew that without the bill of lading the plaintiffs could neither enter the goods at the custom house nor obtain them from the ship. The letter and the invoice, read together, announce this intention of McBlain & Co. not to part with the goods, but to leave the matter of the delivery to J. & J. Stuart & Co. The letter says in effect that the bill is payable to them, and that they had the bill of lading, and the invoice says, shipped, &c., " and consigned to order." Stuart & Co. not only had the right, but they were bound to deliver, or to decline to deliver, as they might judge safe for McBlain & Co. Stuart & Co. and Ralph & Co. understood the letter and invoice alike, and when the defendants questioned the sufficiency of the acceptance, they, the plaintiffs, gave a reference that they might be satisfied. The testimony shows that the defendants refused to deliver either the seed or the bill of lading, and that neither was ever delivered, nor did they ever receive the bill accepted, except for the purpose of satisfying themselves of the responsibility of the plaintiffs, and thereafter they by letter again declined to deliver the seed. There was then no delivery, actual or constructive, nor was there any thing that enabled the plaintiffs (in making out their title) to dispense with a delivery. Without one or the other, the evidence of title failed, and the nonsuit was properly granted.

III. At the very best for the plaintiffs, the letter and the invoice are but an offer of sale. McBlain & Co., acting by their agents, J. & J. Stuart & Co., to whom the bill of lading was sent, had an undoubted right to withdraw that offer. This

they did, and they refused to make the delivery. The acceptance was never made, except conditionally, the plaintiffs saying Stuart might inquire (as to their being good) of persons in the same trade. After this the defendants again refused to make the delivery. The contract was never complete, the title never passed, and again I submit, the nonsuit was right.

IV. Before the statute of frauds a parol offer to sell, an acceptance and a tender of the price at the time, passed the title. Since the statute there must be a compliance with its requirements. In reading the text books this distinction must be borne in mind. (See 2 Starkie's Ev. 888, ed. of 1834; *Artcher* v. *Zey*, 5 Hill, 200; Saunders' Pleadings and Ev. 543; Smith's Mercantile Law, 567, and onward; 2 R. S. 136, § 3.)

By the Court. DALY, J.—This action was brought to recover a quantity of seed in the possession of the defendants, which the plaintiffs claimed had been sold to them by Mc-Blain & Co., of Newry, Ireland. The plaintiffs gave an order for seed to an agent of McBlain & Co., in this city, to be paid for by a bill at ninety days, and McBlain & Co. sent out seed differing in quantity, price, and in the manner in which it was packed from the order; upon making the shipment of which they drew a bill payable to the order of the defendants, and sent it to the defendants, advising the plaintiffs that the defendants would hand them the bill of lading. The plaintiffs accepted the bill and offered it to the defendants, but the defendants refused to deliver the seed, unless the plaintiffs would discount the bill. The bill was then left with one of the defendants, one of the plaintiffs telling him that he might make inquiries among persons in the trade as to the plaintiffs' credit; but the defendants afterwards sent a communication in writing to the plaintiffs, declining to make the inquiry respecting the plaintiffs' standing, and advising them that the seed would not be delivered unless it was paid for.

To constitute a sale under the statute, in a case like this, where no memorandum in writing had been subscribed by the parties to be charged, it must appear that there was at least a partial delivery or a payment in part of the purchase money ; and here there was neither. There was no delivery ; the bill of lading was sent, not to the plaintiffs, but to the defendants, who refused to give it up, unless the seed was paid for, and there was no payment. The plaintiffs, it is true, endorsed their acceptance upon the draft and tendered it to the defendants, which was doing all they were required to do under the contract ; but the defendants refused to receive it on behalf of the principals, or to deliver the seed, so that the title to the property never passed either by a delivery, or by an acceptance by McBlain & Co., or by their agents, the defendants, of the purchase money. If the defendants had received the draft, that would have vested in the plaintiffs the title to the property, but they refused to receive it, or to deliver the bill of lading, thus repudiating or refusing to fulfill the contract; and as the act essential to constitute a sale under the statute did not take place, the nonsuit was properly granted.

Judgment of nonsuit sustained.